UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | |
|---|---|
| ROGER DESOUSA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:08-cv-44 |
| | ) Mattice/Carter |
| JABIRU USA SPORT AIRCRAFT, LLC, | ) |
| JABIRU AIRCRAFT PTY LTD., | ) |
| | ) |
| Defendants. | ) |

REPORT and RECOMMENDATION

I. Introduction

Defendants Jabiru USA Sport Aircraft, LLC (Jabiru USA), and Jabiru Aircraft Pty Ltd. (Jabiru Aircraft), (collectively, the Jabiru defendants) move for an order pursuant to 9 U.S.C. § 3 to stay the trial and all other proceedings in the instant case until arbitration has been had in accordance with the purchase agreement entered into between the parties. [Doc. 3]. The *pro se* plaintiff objects on the ground that the purchase agreement and the arbitration provision within it are unenforceable. Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. For the reason stated herein, it is RECOMMENDED the Jabiru defendants' motion to stay be GRANTED.

II. Background

Plaintiff brought this action *pro se* on May 27, 2008. Jabiru USA is a Tennessee limited liability company with its principal place of business in Shelbyville, Tennessee. (Complaint ¶ 2). Jabiru USA is a Jabiru kit aircraft and engine dealer, and Jabiru Aircraft, a foreign company with its principal place of business in Bundaberg, Australia, designs, manufacturers and sells

1

Jabiru kit aircraft all over the world including to Jabiru USA. (Complaint ¶¶ 2-3). On or about May 22, 2005, the plaintiff "placed a deposit" for a Jabiru kit aircraft from Jabiru USA which was designed, manufactured and supplied by Jabiru Aircraft. (Complaint ¶¶ 5-6). The plaintiff subsequently assembled it. (Complaint ¶ 7). On January 13, 2008, plaintiff crashed his Jabiru kit aircraft on the landing at the end of a runway at Santa Monica Airport, California severely damaging the aircraft. (Complaint ¶ 8). Plaintiff alleges the cause of the crash was brake failure. (Complaint ¶ 9).

Plaintiff brings state law claims of strict liability, negligence, gross negligence, breach of express and implied warranties, violations of the Tennessee Consumer Protection Act, and violations of the Tennessee Products Liability Act against the Jabiru defendants.

In his response in opposition to the Jabiru defendants' motion to stay, the plaintiff makes the following relevant factual allegations: the plaintiff and his wife visited Jabiru USA's factory at the end of April 2005. (Plaintiff's Response ¶ 1). They spent approximately four hours at the factory asking questions about the kit. The questions were answered by Ben Krotje, a salesman and Nick O., a pilot, both Jabiru USA employees. (Plaintiff's Response ¶ 1). "Pete Krotje of Jabiru USA [ ] emailed the agreement to the plaintiff after the plaintiff agreed to purchase the aircraft kit verbally by phone on or around May 15, 2005." (Plaintiff's Response ¶ 3). "The agreement was not explained in any way by the defendant, and the plaintiff did not seek legal counsel nor did he fully understand the agreement." (Plaintiff's Response ¶ 4). "The plaintiff relied on the verbal and written claims about the kit made by the defendants stated on their websites, sales brochures, and during the factory tour and [ ] demo ride to make the purchase." (Plaintiff's Response ¶ 6).

In support of their motion to stay, the Jabiru defendants' have submitted what appears to be the second page of a two page agreement called a "Purchase Agreement." (*See* Exhibit 1 to defendants' Motion for Stay).[1] According to the defendants, the plaintiff signed the Purchase Agreement which is dated May 16, 2005. Plaintiff does not dispute this particular contention. Paragraph 7 of the Purchase Agreement consists of a broadly defined agreement to arbitrate:

> You and your spouse agree that Tennessee Law applies to this contract. Any dispute or claim relating to this agreement will be resolved by binding arbitration in Tennessee under Rules of the American Arbitration Association. This contract may be made public.

(Paragraph 7 of the Purchase Agreement, Ex. 1 to Motion for Stay, Doc. 3).

### III. Analysis

The Federal Arbitration Act (FAA) applies to "a written provision in ... a contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. 9 U.S.C. § 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Thus, pursuant to Section 3, "[i]f a plaintiff's cause of action is covered by an arbitration clause, the court must stay the proceedings until the arbitration process is complete." *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). Therefore the undersigned will first examine

---

[1] This same document is attached to the Jabiru defendants' answer as Exhibit 2, Doc. 2-3.

3

whether the asserted causes of action of this lawsuit are covered by the arbitration clause at issue in this case.

This action arises from the crash of a Jabiru kit aircraft which the plaintiff bought from Jabiru USA and was allegedly manufactured by Jabiru Aircraft. Plaintiff entered into a contract addressing the obligations owed to the plaintiff by Jabiru USA resulting from the sale of said aircraft kit. Paragraph 4 of the Purchase Agreement addresses the warranties which are purportedly available or not available from the Jabiru defendants on the Jabiru kit aircraft. Paragraph 5 of the Purchase Agreement requires the purchaser to sign a "Release, Waiver and Hold Harmless Agreement." Paragraph 6 of the Purchase Agreement states in relevant part, "You and your spouse hereby indemnify and hold the manufacturer, Jabiru USA and Dealer harmless from: (a) any liability of any kind arising from the delivery, assembly, use, maintenance, or operation of the products purchased...." The Purchase Agreement further unequivocally states that "[a]ny dispute or claim relating to this agreement will be resolved by binding arbitration...." Thus, the undersigned is satisfied that the issues involved in this action are covered by the Purchase Agreement.

*Is the Arbitration Provision in the Purchase Agreement Enforceable?*

The FAA "manifests a 'liberal federal policy favoring arbitration agreements.'" *Watson Wyatt & Company v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). It "'embodies a national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *Seawright v. American General Financial Services, Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). *See also*

4

*Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343345 (6th Cir. 2006) ("Congress enacted the FAA in 1925 pursuant to its power to regulate interstate commerce to ensure judicial enforcement of privately made agreements to arbitrate and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.") (internal quotations omitted). "It is well established that any doubts regarding arbitrability should be resolved in favor of arbitration. *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Thus, the underlying question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Seawright*, 507 F.3d at 972 (internal citations omitted); *see also, Glazer*, 394 F.3d at 450 ("[b]efore this Court can send a case to arbitration, we must first determine whether a valid agreement to arbitrate exists.")

Section 2 of the FAA broadly addresses the circumstances under which an arbitration agreement is unenforceable: "[a] written provision in ... a contract evidencing a transaction to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2; *see also Doctor's Associates v. Casarotto*, 517 U.S. 681, 683 (1996) ("The Federal Arbitration Act [ ] declares written provisions for arbitration 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'") (emphasis added). "Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to

5

the applicable state laws of contract formation." *Seawright*, 507 F.3d at 972 .[2] In the instant case, the parties have contracted to apply Tennessee law. (*See* Paragraph 7 of the Purchase Agreement). Thus, Tennessee law of contract formation applies in determining whether the arbitration provision is enforceable.

Plaintiff's arguments concerning the enforceability or unenforceability of the arbitration agreement are all based on the premise that the substantive portions of the Purchase Agreement are unenforceable, and, therefore, the arbitration agreement itself is unenforceable. Specifically, the plaintiff asserts that Paragraphs 4, 5, and 6 of the Purchase Agreement are unenforceable because they are unconscionable and were induced by fraud, the plaintiff did not knowingly and intelligently agree to those provisions, they are part of an adhesion contract, and these provisions violate public policy as their enforcement would negate the protections afforded by the Tennessee Consumer Protection Act and the Tennessee Products Liability Act and would endanger public safety. Consequently, argues the plaintiff, the Purchase Agreement as a whole is unenforceable thereby rendering the arbitration provision in Paragraph 7 unenforceable as well. Further, plaintiff asserts that "[e]nforcement of binding arbitration, as called by the [Purchase Agreement], would unfairly set an outcome most favorable for the defendants..." It is not

---

[2] There is an important caveat to this rule worth mentioning but which is not at issue in this case: state law is applicable only where the particular law in question addresses the enforceability of contracts in general, not simply the enforceability of an agreement to arbitrate. *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) ("state law...is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.") (emphasis original). Thus, where a state law would operate to invalidate only an agreement to arbitrate and not any other type of contract, such state law would run afoul of the FAA and thereby be pre-empted. *See e.g. Doctor's Associates, Inc.*, 517 U.S. at 683 (the FAA pre-empted a state statute requiring arbitration provisions to be typed in underlined capital letters on the first page of a contract.)

entirely clear what the plaintiff means by this statement, but the undersigned surmises the plaintiff is concerned that if the provision to arbitrate is enforced, he will be prohibited from raising his arguments to the arbitrator that the substantive portions of the Purchase Agreement are unenforceable. This would be an incorrect assumption.

The plain language of the Purchase Agreement states "[a]ny dispute or claim relating to this agreement will be resolved by binding arbitration in Tennessee under Rules of the American Arbitration Association." Assuming the arbitration provision itself to be valid and enforceable, plaintiff has agreed to arbitrate *all* his claims relating to the Purchase Agreement. Claims concerning the enforceability of the *substantive* portions of the Purchase Agreement based on the arguments discussed above certainly *relate* to the Purchase Agreement; thus, they are arbitrable. *See e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967) ("a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced from fraud"); *Burden v. Check into Cash of Kentucky*, 267 F.3d 483, 491 (6th Cir. 2001) (noting that a challenge to the enforceability of a contract as a whole based on contract formation issues is for the arbitrator while a challenge to the enforceability of an arbitration provision based on contract formation issues as to that arbitration provision is for the court to decide), *cert. denied*, 535 U.S. 970 (2002). Even an allegation that an arbitration provision is used to further a fraudulent scheme embodied in a contract as a whole is not sufficient to remove the issue from the arbitrator, absent specific allegations that the arbitration agreement itself was procured wrongfully by such a method as fraud, duress or unconscionability. *Id.* ("pleading that an arbitration clause was part of a broader fraudulent scheme without more, is no longer sufficient to overcome the strong federal policy in favor of arbitration.") (internal citation omitted).

7

The only question before the undersigned is whether the *arbitration provision* is enforceable. In determining the validity of an agreement to arbitrate, "the arbitration clause is to be examined separately from the rest of the contract for purposes of determining whether the dispute should be submitted to arbitration." *Watson Wyatt & Company v. SBC Holdings, Inc.*, 513 F.3d 646, 651 (6th Cir. 2008); *see also Glazer*, 394 F.3d at 452 ("arbitration provisions are 'severable' because the FAA does not permit the courts to examine the enforceability of contracts containing arbitration provisions"); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*, 383 F.3d 512, 515 (6th Cir. 2004) ("in deciding whether a valid agreement to arbitrate exists, district courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to the challenges to the validity of the contract as a whole"); *Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 628 (6th Cir. 2004) ("a general arbitration clause is enforceable even if it is contained in a contract that is generally asserted to be voidable, unless the basis for the rescission applies specifically to the arbitration clause;" "[o]ne seeking to challenge an arbitration clause must make an argument that is specific to the arbitration clause.")

The party asserting an arbitration provision is unenforceable bears the burden of proof. *Cooper v. MRM Investment Co.*, 367 F.3d 493, 510 (6th Cir. 2004) ("the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration"); *Morrison v. Circuit City Stores, Inc*, 317 F.3d 646, 659 (6th Cir. 2003)( same); *Jean v. The Stanley Works*, 2008 WL 2778849 *6 (N.D. Ohio July 14, 2008) ("An arbitration clause is presumptively valid and it is the plaintiffs' burden to demonstrate the arbitration clause is invalid or unenforceable.") Plaintiff does not, however, make any arguments directed at the enforceability of the *arbitration*

8

*provision*. Plaintiff offers no reason to invalidate the arbitration provision itself. Plaintiff does not allege defendants made misrepresentations relating to the arbitration provision or that the arbitration provision itself is unconscionable. Plaintiff stated he received the Purchase Agreement by e-mail. There is no indication, nor does plaintiff argue, that he did not have ample opportunity to read the Purchase Agreement before he signed it. Further, while plaintiff states he did not seek legal counsel to review the agreement for him, he does not allege he was given inadequate time to do so. The arbitration provision sets out in clear, simple language that all matters relating to the Purchase Agreement are subject to binding arbitration. If plaintiff failed to read this provision, he did so at his peril. *See Richardson v. McGee*, 246 S.W. 2d 572, 574 (Tenn. 1952) (a party is estopped to repudiate a contract simply because he negligently failed to read it); *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) ("'It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law.'") (quoting *Upton v. Tribilock*, 91 U.S. 45 (1875)). Further, the record before the undersigned unequivocally indicates that plaintiff possesses the intellectual ability to understand the simple arbitration provision. According to the plaintiff, he assembled from a kit a working aircraft which he flew himself. Further, plaintiff is representing himself in this matter, and his filings with the court are indicative of an intelligent, educated individual.

In sum, the plaintiff offers no reasons why the arbitration provision itself cannot be enforced. Therefore, the undersigned concludes the proper course of action is to grant defendant's motion to stay this action pursuant to Section 3 of the FAA pending arbitration of

9

plaintiff's claims -- including his assertions that the substantive portions of the Purchase Agreement are unenforceable. *See e.g.*, *Kean-Argovitz Resorts*, 383 F.3d at 518 (after concluding the plaintiff's arguments were directed at the enforceability of the contract as a whole rather than the arbitration provision, the court remanded with instructions to refer the case to arbitration.)

IV. Conclusion

For the reason stated herein, it is RECOMMENDED that defendant's motion to stay this action pending arbitration be GRANTED.[3]

Dated: November 3, 2008          *s/William B. Mitchell Carter*
                                 UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).